ABRAHAM GOLDSWORTH, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Opinion Filed March 7, 1922.

STREET RAILROADS: Pedestrian: Injured at Street Crossing: Vigilant Watch Ordinance: Humanitarian Rule: Evidence: Insufficient. In an action for damages against a street car company by a pedestrian, injured at a street crossing, where the grounds of negligence charged, and upon which the cause was submitted to the jury, were a violation of the Vigilant Watch Ordinance of the City of St. Louis on the part of defendant's motorman, and a violation of defendant's duty under the last chance doctrine, evidence *held* insufficient to make a case under either of the assignments of negligence.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. M. Hartmann*, Judge.

REVERSED AND REMANDED (*with directions*).

*Charles W. Bates, T. E. Francis* and *R. E. Blodgett* for appellant.

The action of the trial court in setting aside the verdict of a jury was erroneous, because the testimony introduced showed that plaintiff was not entitled to recover as a matter of law.   Boyd v. Railway Company, 105 Mo. 371; Sites v. Knott, 197 Mo. 684; Boring v. Metropolitan Street Railway Company, 194 Mo. 541; Keele v. Railroad, 258 Mo. 62; Laun v. Railroad, 216 Mo. 563; Reeves v. Railroad, 251 Mo. 169; Roenfelt v. Railway, 180 Mo. 554; State v. Reynolds, 233 S. W. 222; Gubernich v. Railways, 217 S. W. 22; Alexander v. Railway, 233 S. W. 44; Evans v. Railway, 233 S. W. 397.

*Harmon J. Bliss* and *William Zachritz* for respondent.

(1)   It is the peculiar duty of trial courts to grant a new trial where the verdict is arbitrary, or the result of passion, prejudice or misconduct on the part of the jury, or where a verdict is against the evidence or the weight of the evidence. The granting of a new trial rests peculiarly within the discretion of the trial court. McDonough v. Nicholson, 46 Mo. 35; McKay v. Underwood, 47 Mo. 185; Iron Mountain Bank v. Armstrong, 92 Mo. 265; McCullough v. Phoenix Ins. Co., 113 Mo. 606; Powell v. Mo. Pac. Ry. Co., 59 Mo. 335. The discretion of a court in granting a new trial will not ordinarily be reversed on appeal, where the evidence is conflicting. First Natl. Bank of Brunswick v. Wood, 124 Mo. 27. The question whether or not the verdict is against the weight of the evidence rests especially in the sound discretion of the trial court, and if it is not shown that such discretion was abused, the appellate court will not interfere. Hurley v. Kennally, 186 Mo. 225; Kinlen v. Metropolitan St. R. Co., 216 Mo. 147, 176; Weinstein v. Toledo, St. L. & W. R. Co., 128 Mo. App. 224; Roscoe v. Metropolitan St. R. Co., 202 Mo. 576; Gould v. St. John, 207 Mo. 619, 631; Franklin v. St. Louis & M. Riv. R. Co., 188 Mo. 532; Behle v. Kings-Brinsmade Merc. Co., 114 Mo. App. 439. Where the case was submitted to the jury on fair instructions and there was substantial evidence for both sides under which the jury might have found for either plaintiff or defendant, the appellate court should not hold that it was error to grant one new trial. Casey v. St. Louis Transit Co., 186 Mo. 229. (2)   While the general rule is that if the insured party negligently placed himself in a position of danger, that fact would bar a recovery, there is a well-recognized exception to the rule where the defendant might, notwithstanding the negligence of plaintiff, have avoided injuring him. Sinclair v. Chi-

cago, B. & K. C. R. Co., 133 Mo. 233. And though the plaintiff was guilty of some negligence which remotely contributed to the injury, yet, if the defendant could, by the exercise of ordinary care and prudence, have prevented it, he is liable. Burham v. St. L. & Iron Mt. R. Co., 56 Mo. 338; Meyer v. Chicago, R. I. & Pac. R. Co., 59 Mo. 223; Matthew v. St. Louis Grain Elev. Co., 59 Mo. 474; Walsh v. Mississippi Transit Co., 52 Mo. 434; Price v. St. Louis, K. C. & N. R. Co., 72 Mo. 414; Kelly v. Hannibal & St. Joseph R. Co., 75 Mo. 138; Sweigert v. Hannibal & St. Jo. R. Co., 75 Mo. 474; Werner v. Citizens R. Co., 81 Mo. 368; Cadmus v. St. L. Bridge & Tunnel Co., 15 Mo. App. 86; Powell v. Missouri Pac. R. Co., 59 Mo. App. 626; Hutchinson v. St. L. & Mer. R. Co., 88 Mo. App. 376; (3) If there was time and opportunity for the motorman to have stopped or so reduced the speed of his car as to avoid inflicting injury, after the perilous position of plaintiff was discerned, or could have been discerned by the motorman by the exercise of ordinary care, the law is that though the plaintiff was guilty of negligence, his negligence was not the direct cause of the injury, but that the negligence of the motorman in failing to stop the car and prevent the injury was the sole and proximate cause of the injury Moore v. St. Louis Transit Co., 97 Mo. App. 728; Sepetowski v. St. Louis Transit Co., 102 Mo. App. 110; Barrie v. St. Louis Transit Co., 102 Mo. App. 87; Linder v. St. Louis Transit Co., 103 Mo. App. 574; Hanheide v. St. Louis Transit Co., 104 Mo. App. 323; Rapp v. St. Louis Trans. Co., 190 Mo. 144, 161; Dietring v. St. Louis Tran. Co., 109 Mo. 524, 541; Waddell v. Metropolitan St. R. Co., 130 Mo. App. 680. The principal on which the last-chance doctrine rest is that the duty to use caution, and not to inflict injury, owed to careless as well as to careful people, and the negligence of the person injured does not contribute, legally speaking—that is, does not directly contribute to the injury, if, subsequent to it, the operator had a clear chance of

preventing harm by exercising the proper degree of care. Hensler v. Stix, 133 Mo. 162, 182. Independent of a vigilant watch ordinance, the humanitarian, or, more properly speaking, the last-chance doctrine, is the law of this State. Mertens v. St. Louis Transit Co., 122 Mo. App. 304, 312. A motorman, possessed of actual or constructive notice of the plaintiff's perilous situation, and having the time, space and means to stop his car, who failed to do so, is guilty of negligent violation of his humanitarian duty. Ross v. Metropolitan St. R. Co., 132 Mo. App. 472, 478; Zander v. St. Louis Transit Co., 246 Mo. 445, 464; Bensiek v. St. Louis Transit Co., 175 Mo. App. 121; Powers v. St. Louis Transit Co., 202 Mo. 267, 283; McNamara v. Metropolitan St. R. Co., 133 Mo. App. 645. (4) It is not only the duty of a motorman in charge of an electric car, to exercise care to avert injuring a person whom he discovers in peril on the track, but it is equally his duty to exercise ordinary care to discover whether a person is about to place himself in danger. Barnes v. St. Louis Transit Co., 119 Mo. App. 38. (5) A traveler about to approach a street railway track may be excused from misjudging the speed at which a car is approaching the crossing so that such misjudgment will not necessarily make him guilty of contributory negligence in case he is hurt, but a motorman cannot be excused for misjudging the speed of his car or the space it might be stopped in, "because of the skill and experience required by his position." Hentz v. St. Louis Transit Co., 115 Mo. App. 667. (6) The failure of a motorman operating a car on a street railway to obey the provisions of the Vigilant Watch Ordinance in force in the city where the car is used, is such negligence as to render the owners of such car liable for any personal injury caused by the failure of such motorman.

BIGGS, C.—This negligence case tried before a jury resulted in a verdict for the defendant railways company. Upon the filing of a motion for a new trial the

court below sustained the same, giving as reasons therefor that the verdict of the jury was against the weight of the evidence, and against the law and the evidence. From this order defendant appeals, but does not ask us to review the action of the trial court on the grounds given in sustaining the motion, but asserts that the court erred in granting the new trial, because the evidence was insufficient to make a case against the defendant, and for this reason the cause should not have been submitted to the jury, but that its demurrers to the evidence should have been sustained.

The grounds of negligence charged and upon which the cause was submitted to the jury, were a violation of the Vigilant Watch Ordinance of the city of St. Louis on the part of defendant's motorman, and a violation of the defendant's duty towards the plaintiff under the last chance doctrine.

The answer was a general denial.

So far as it is necessary to state, the facts are these: The scene of the accident was at the corner of Seventh Street and Washington avenue in the city of St. Louis. The time, about 7 p. m., on November 6, 1917. On Washington avenue, which is a public street about fifty feet six inches wide at the point, defendant operates a double line of street cars running east and west, the north track being used for westbound and the south track for eastbound traffic. On Seventh Street, which is also a public street thirty-five feet six inches wide, is a single track line, which is used by northbound cars.

At the time in question plaintiff, a pedestrian, was crossing Washington avenue on the west side of Seventh street, which was a regular crossing, that is plaintiff was crossing over Washington avenue from the southwest corner of the intersection of the two streets to the northwest corner, and while so doing was, according to plaintiff's testimony, struck by a westbound street car of the defendant and injured.

Plaintiff testified that the streets at the point were well lighted at the time; that when he started across the

street there were no vehicles or street cars coming either way to interfere with his crossing; that when he reached a point in the middle of the two tracks and between the tracks and about three feet south of the south rail of the westbound track, he then observed the defendant's car coming towards him from the east at a speed of about eight miles an hour. Plaintiff was walking at an ordinary gait and proceeded on over the north track in front of the car. He testified that he did not look again at the car until just as it struck him. At the time when he was south of the westbound track and observed the car he testified that the car at the time was about in the middle of Seventh street, which would place it about seventeen feet from the plaintiff if plaintiff was on a line with the curb of Seventh street, or twenty-seven feet from the plaintiff if the plaintiff at the time was on the building line. Considering the moderate speed in which the car was coming at the time, plaintiff committed himself to the crossing, as he believed he had ample time to cross in front of the car before it reached him. The motorman in charge of the car under the same circumstances could not be blamed for making the same assumption, that is that plaintiff had ample time to get over before his car would reach the point. While the plaintiff was walking from the point three feet south of the south rail of the westbound track to the north rail of the track, a distance of eight feet, the car was proceeding westwardly, and it of course follows that when plaintiff reached the north rail of the track the car was considerably less than twenty-seven feet from him. As plaintiff reached the north rail of the westbound track, he then for the first time noticed that an automobile was coming westwardly in the space between the car track and the curb on the north side of Washington avenue and about even or slightly in front of the front end of the street car. This automobile coming towards him impeded his progress and he was compelled to stop as he reached the north rail of the track, for if he went beyond that point he would be liable to be struck by the oncoming automobile,

so according to plaintiff's version, he had to choose the lesser of the two evils and be struck by defendant's street car.

Plaintiff put upon the stand an expert witness, who testified that, under the conditions that existed at that time, a street car coming at the rate of eight miles an hour could be stopped within twenty-seven feet, which is the distance from the middle of Seventh street to the point where the plaintiff was standing at the time he first observed the car. The evidence however, fails to locate the position of the street car at the time the plaintiff was compelled to stop on the north rail and thereby became in a dangerous position. Inasmuch as plaintiff had to walk from a point eight feet south of the north rail to the north rail the car, at the time he stopped on the north rail, was necessarily less than twenty-seven feet from the plaintiff. At the time he saw the automobile and was unable to continue the crossing, the car was traveling about twice as fast as plaintiff was walking, consequently the car must have traveled some twelve or fifteen feet while the plaintiff was walking eight feet. This would place the car very close to plaintiff at the time he stopped on the north rail of the track.

It is argued on behalf of the plaintiff that it was not negligence as a matter of law for him to commit himself to the crossing under the circumstances and in view of the fact that the car at the time was twenty-seven feet away and coming towards him at a very moderate rate. We might concede this to be true for the purposes of the argument.

In the case of Rosenfeldt v. Railway, 180 Mo. l. c. 567, 79 S. W. 706, it is said:

"The plaintiff seeing the car and the speed with which it was coming, judged for himself that he could clear the track before the car reached him. If that was a reasonable judgment for the plaintiff, how can he condemn the motorman if he, viewing the same situation, should reach the same conclusion?"

If plaintiff had ample time to make the crossing in front of the car, as he testified that he did, it could not be said that there was any duty on the part of the motorman to begin to stop the car, considering its moderate speed, at the time it was twenty-seven feet from the plaintiff. Plaintiff says he could have gotten over the track in safety except for the fact that just as he was stepping over the north rail he then for the first time observed the automobile coming along on the north side of the car, which compelled him to stop on the track. At that moment the evidence fails to show where the car, was, but it was necessarily, as stated, considerably closer to the plaintiff than twenty-seven feet. In order to make a case based upon a violation of the Vigilant Watch Ordinance, it is incumbent on the plaintiff to show the position of the car when he reached a position of danger, and to show that the car was then a sufficient distance away to be stopped in time to avoid the injury.

In the present case, considering the fact that the plaintiff was *sui juris*, the danger zone was the track itself. At the time the car was twenty-seven feet away plaintiff was not in the danger zone but was three feet south of the westbound track and when he entered the danger zone the car traveling all the time was necessarily nearer to the plaintiff than twenty-seven feet. The evidence wholly failed to show that the motorman could have stopped the car after plaintiff entered upon or stopped upon the track, and likewise the evidence was wholly lacking in proof as to the position of the car, and whether it could be stopped after the plaintiff was compelled, by reason of seeing the automobile, to stop on the north rail of the track. In view of this lack of evidence, there was no case for the jury under the Vigilant Watch Ordinance.

Nor do we think the plaintiff made a case under the Humanitarian Doctrine. Under this assignment it is claimed that after plaintiff's passage over the track was blocked by the oncoming automobile and when he was

thereby compelled to stop on the north rail of the track and did not have sufficient time to get off of the track by retracing his steps southward and thereby avoid being struck by the car, that the motorman after seeing such position of the plaintiff failed in his duty to exercise ordinary care to stop the car and avoid injuring him. In order to make a case under this theory, it was necessary for the plaintiff to show that after it became apparent to the motorman that the automobile prevented plaintiff from continuing to cross the track in safety, or should have become apparent to him by the exercise of ordinary care, that then the motorman was a sufficient distance away from the plaintiff and was able by the exercise of ordinary care, to bring the car to a stop in time to avoid injuring plaintiff. This showing plaintiff failed to make, for there is no evidence as to where the car was at that time, and whether or not it was possible for the motorman to stop it. Of course, if the motorman saw plaintiff's perilous position on the track and could thereafter with his appliances and under the conditions have stopped the car, it was his duty to do so. Even though it be conceded that the motorman saw, or by the exercise of ordinary care should have seen, the automobile coming alongside of his car and attempting to pass in front of it and thereby block the passage of plaintiff over the car track, the evidence wholly fails to show that thereafter he could have stopped the car in time to have avoided striking the plaintiff. There was neither time nor opportunity so far as the record discloses for him to have either stopped or so reduced the speed of the car so as to avoid inflicting the injuries upon plaintiff after the plaintiff's perilous position was discovered, or should have been discovered by the motorman by the exercise of ordinary care. Such being the state of evidence, there was no place in the case for the application of the humanity rule.

It might be stated that the record discloses from the testimony of the motorman and several disinterested

witnesses that the car did not strike the plaintiff at all, but that he ran in front of the car, succeeded in getting over the track, and was injured by running into the side of the automobile. In view of this evidence, we are at a loss to understand on what theory it could be said that the verdict of the jury was against the weight of the evidence.

As plaintiff's evidence was insufficient to make a case under either of the assignments of negligence, the court erred in failing to sustain defendant's demurrers. Such being the fact it was error for the court, following a verdict for the defendant, to sustain plaintiff's motion for a new trial. The judgment of the court in sustaining the motion should be reversed and the cause remanded, with directions to enter judgment for defendant in accordance with the verdict of the jury.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded with directions as recommended by the Commissioner. *Allen, P. J., Becker* and *Daues, JJ.,* concur.